```
                            CLERK
                    U.S. DISTRICT COURT
                    DISTRICT OF NEW JERSEY
                         RECEIVED

                    2015 NOV -3  A 11: 08
```

Owen Thomas Lennon
C/o: General Post Office
2 W. Emerald Isle Dr.
Lake Hopatcong, republic
Non domestic to the United States
Warning 39 USC-3003
Near [07849]
Pro persona, in vivus, sui juris

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| OWEN THOMAS LENNON, JR, an individual | § PART: _____ <br> § <br> § <br> § Case No. |
| vs. | § <br> § |
| FIRST NATIONAL BANK OF ARIZONA; HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE FOR SECURITIZED TRUST GSAA HOME EQUITY TRUST 2005-12; GS MORTGAGE SECURITIES CORP.; GS MORTGAGE SECURITIES CORP.; WELLS FARGO BANK, N.A.; MORTGAGE ELECTRONIC REGISTRATION SYSTEM, AKA "MERS" AND DOES 1 THROUGH 100, INCLUSIVE | § **APPLICATION FOR TEMPORARY** <br> § **RESTRAINING ORDER,** <br> § **PRELIMINARY INJUNCTION, AND** <br> § **DECLARATORY RELIEF** <br> § <br> § <br> § <br> § <br> § <br> § <br> § |

0

---

**APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND DECLARATORY RELIEF**

## APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND DECLARATORY RELIEF

COMES NOW, Plaintiff OWEN THOMAS LENNON, JR ("Plaintiff") and files *Verified Emergency Petition for Temporary Restraining Order and/or Preliminary Injunction*, **and Declaratory Relief** against the listed Defendants. A temporary restraining order is appropriate to maintain the status quo. Plaintiff's home will be sold within the next week and Plaintiff are subject to eviction actions, without immediate intervention from this Court.

### A. PARTIES

Plaintiff is now, and at all times relevant to this action, a resident of the County of MORRIS, State of NEW JERSEY.

At all times relevant to this action, Plaintiff has owned the Property located at 2 WEST EMERALD ISLE DRIVE, JEFFERSON TOWNSHIP, NJ 07849 (the "Property").

Defendant, FIRST NATIONAL BANK OF ARIZONA (herein referred to as "FIRST NATIONAL BANK") is a National Banking Association, doing business in the County of MORRIS, State of NEW JERSEY. Plaintiff is further informed and believes, and thereon alleges, that FIRST NATIONAL BANK is the Originator of the loan.

Defendant, HSBC BANK USA, NATIONAL ASSOCIATION (herein referred to as "HSBC BANK"), as Trustee for securitized trust GSAA HOME EQUITY TRUST 2005-12 (herein referred to as "TRUST 2005-12"). Plaintiff is informed and believes, and thereon alleges that, Defendant HSBC BANK, is a national banking association, doing business in the County of MORRIS, State of NEW JERSEY and is the purported Master Servicer for Securitized Trust and/or a purported participant in the imperfect securitization of the Note and/or the Mortgage/Deed of Trust as more particularly described in this Complaint.

Defendant, GS MORTGAGE SECURITIES CORP.. Plaintiff is informed and believes, and thereon alleges that, Defendant GS MORTGAGE SECURITIES CORP., is a corporation,

1

doing business in the County of MORRIS, State of NEW JERSEY and is the purported Sponsor for Securitized Trust and/or a purported participant in the imperfect securitization of the Note and/or the Mortgage/Deed of Trust as more particularly described in this Complaint.

Defendant, GS MORTGAGE SECURITIES CORP.. Plaintiff is informed and believes, and thereon alleges that, Defendant GS MORTGAGE SECURITIES CORP., is a corporation, doing business in the County of MORRIS, State of NEW JERSEY and is the purported Sponsor for Securitized Trust and/or a purported participant in the imperfect securitization of the Note and/or the Mortgage/Deed of Trust as more particularly described in this Complaint.

Defendant, WELLS FARGO BANK, N.A. Plaintiff is informed and believes, and thereon alleges that, Defendant WELLS FARGO BANK, N.A., is a corporation, doing business in the County of MORRIS, State of NEW JERSEY and is the purported Master Servicer for Securitized Trust and/or a purported participant in the imperfect securitization of the Note and/or the Mortgage/Deed of Trust as more particularly described in this Complaint.

Defendant, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., aka MERS ("MERS"), Plaintiff is informed and believes, and thereon alleges, that MERS is a corporation duly organized and existing under the laws of New York, whose last known address is 1818 Library Street, Suite 300, Reston, Virginia 20190; website: http://www.mersinc.org. MERS is doing business in the County of MORRIS, State of NEW JERSEY. Plaintiff is further informed and believes, and thereon alleges, that Defendant MERS is the purported Beneficiary under the Mortgage/Deed of Trust and/or is a purported participant in the imperfect securitization of the Note and/or the Mortgage/Deed of Trust, as more particularly described in this Complaint.

Plaintiff does not know the true names, capacities, or basis for liability of Defendants sued herein as Does 1 through 100, inclusive, as each fictitiously named Defendant is in some manner liable to Plaintiff, or claims some right, title, or interest in the Property. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes, and therefore alleges, that at all relevant times mentioned in this Complaint, each of the fictitiously named Defendants are responsible in some manner for the injuries and damages to Plaintiff so alleged and that such injuries and damages were proximately caused by such Defendants, and each of them.

APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND DECLARATORY RELIEF

Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, each of the Defendants were the agents, employees, servants and/or the joint-venturers of the remaining Defendants, and each of them, and in doing the things alleged herein below, were acting within the course and scope of such agency, employment and/or joint venture.

## B. INTRODUCTION

On MAY 17, 2005, plaintiff executed and delivered to defendant FIRST NATIONAL BANK a promissory note payable to Originator in the amount of $460,000.00.

On OCTOBER 28, 2005, as security to defendant FIRST NATIONAL BANK for payment of the note, plaintiff executed a Mortgage/Deed of Trust/mortgage conveying to MERS as trustee for the Originator as beneficiary/mortgagee, that real property located at 2 WEST EMERALD ISLE DRIVE, JEFFERSON TOWNSHIP, NJ 07849, which is more specifically described as [legal description of real property]. The Mortgage/Deed of Trust/mortgage was recorded as document number #MB18895P067 in the official records of MORRIS County, New Jersey. This Mortgage/Deed of Trust/mortgage is referred to in this complaint as "the Mortgage/Deed of Trust/mortgage," and the property described in the Mortgage/Deed of Trust/mortgage is referred to as "the property." A copy of the Mortgage/Deed of Trust/mortgage is attached, marked Exhibit _____, and incorporated by reference.

Defendant FIRST NATIONAL BANK did NOT cause to be recorded a notice of default in the official records of MORRIS County, New Jersey, alleging that a breach of the obligation secured by the Mortgage/Deed of Trust/mortgage has occurred as required by law.

Defendants, and each of them, intend to sell the property, having given notice that sale of the property. Unless restrained, defendants, and each of them, will thus sell the property or cause the property to be sold. This sale would be to plaintiff's great and irreparable injury, for which pecuniary compensation would not afford adequate relief, in that plaintiff, having no right to redeem the property from the sale, will forfeit the property if the sale takes place as scheduled.

## C. FACTUAL ALLEGATIONS

For years, mortgage brokers and lenders have been selling loan products that they knew or should have known would never be able to be repaid by the borrower and would prevent

3

APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND DECLARATORY RELIEF

borrowers from ever actually owning the home. Instead, borrowers were offered interest-only, negative amortization, and/or other subprime loan products that amounted to no more than a short term lease until the payments became so unaffordable that the borrowers are now faced with either bankruptcy or foreclosure. The housing bubble of the past decade was created by predatory lending practices, such as charging excessive fees, incorporating payment penalties, negative amortization payments, or other abusive terms in the agreements, providing kickbacks to brokers, flipping loans, using balloon payments to conceal the true burden of the financing, requiring unnecessary insurance and other products, including mandatory arbitration clauses, steering borrowers to subprime loans when they qualify for conventional loans, and using bait and switch tactics. All were rampant within the industry without oversight or good judgment and found to be inconsistent with important national objectives, including the goals of fair access to credit, community development, and stable homeownership by the broadest spectrum of America. Rather than offering a loan product that was viable and long-term for the borrower and lender, brokers and lenders greedily sold whatever they could get away with, arguably the primary catalyst for what is now this country's worst economic crisis since the Great Depression.

 The loan product sold to Plaintiff in this case was exactly the kind of loan that has contributed to our national problem. The Defendants were aware of this trend, and possessed the foresight to advise Plaintiff of this risk. They intentionally concealed the negative implications of the loan they were offering, and as a result, Plaintiff faces the potential of losing their home to the very entity and entities who placed them in this position.

 On or about MAY 17, 2005 (hereinafter referred to as "Closing Date") Plaintiff entered into a consumer credit transaction with FIRST NATIONAL BANK by obtaining a $460,000.00 mortgage loan secured by Plaintiff's principal residence, 2 WEST EMERALD ISLE DRIVE, JEFFERSON TOWNSHIP, NJ 07849. This note was secured by a Deed on the Property in favor of FIRST NATIONAL BANK.

 The terms of the finance transaction with FIRST NATIONAL BANK are not clear or conspicuous, nor consistent, and are illegal which violates several statutes and is in essence creates an illegal loan. Further, this loan was underwritten without proper due diligence by FIRST NATIONAL BANK as evidenced by their failure to verify borrower's income utilizing signed IRS Income Tax Disclosure Form 4506T which would have provided past borrower tax

4

returns. FIRST NATIONAL BANK also used a "GDW Cost of Savings" as the Index for the basis of this loan, because the Lender controls this Index and it is directly based upon the average rate of interest FIRST NATIONAL BANK parent company.

In addition, and unbeknownst to Plaintiff, FIRST NATIONAL BANK illegally, deceptively and/or otherwise unjustly, qualified Plaintiff for a loan which FIRST NATIONAL BANK knew or should have known that Plaintiff could not qualify for or afford by, for example, the underwriter has approved this loan based upon credit scores and the borrower's Stated Income only. Had FIRST NATIONAL BANK used a more accurate and appropriate factor, such as Tax Forms and a more determinative level of scrutiny of determining comply with the requirement to provide Plaintiff with a Mortgage Loan Origination Agreement the debt to income ratio, Plaintiff would not have qualified for the loan in the first place. Consequently, FIRST NATIONAL BANK sold Plaintiff a loan product that it knew or should have known would never be able to be fully paid back by Plaintiff. FIRST NATIONAL BANK ignored long-standing economic principals of underwriting and instead, knowingly, liberally, greedily and without any regard for Plaintiff's rights sold Plaintiff a deceptive loan product.

From 1998 until the financial crash of 2008-2009, over 60 million home loans where sold by originating lender banks to investment banks to be securitized in a complex series of billions of transactions. The Plaintiff's home loan was one of the 60 million notes that were securitized.

Securitization is the process whereby mortgage loans are turned into securities, or bonds, and sold to investors by Wall Street and other firms. The purpose is to provide a large supply of money to lenders for originating loans, and to provide investments to bond holders which were expected to be relatively safe. The procedure for selling of the loans was to create a situation whereby certain tax laws known as the Real Estate Mortgage Investment Conduit (hereinafter "REMIC") Act were observed, and whereby the Issuing Entities and the Lenders would be protected from either entity going into bankruptcy. In order to achieve the desired "bankruptcy remoteness," numerous "True Sales" of the loans had to occur, in which loans were sold and transferred to the different parties to the securitization.

How a particular mortgage loan ended up being transferred to a REMIC TRUST in the securitization process is governed by a contract known as a Pooling and Servicing Agreement ("PSA"). The PSA is a Trust Agreement required to be filed under penalty of perjury with the United States Securities and Exchange Commission ("SEC") and which, along with another

5

**APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND DECLARATORY RELIEF**

document, the Mortgage Loan Purchase Agreement ("MLPA"), is the operative securitization document created by the finance and securitization industry to memorialize securitization transactions. Plaintiff's PSA required at minimum this chain of title:



A "True Sale" of the loan would be a circumstance whereby one party owned the Note and then sold it to another party. An offer would be made, accepted and compensation given to the "seller" in return for the Note. The Notes would be transferred, and the Deeds of Trust assigned to the buyers of the Note, with an Assignment made every step of the way, and, furthermore, each Note would be indorsed to the next party by the previous assignee of record.

In order for the Trustee of the Securitized REMIC Trust to have a valid and enforceable secured claim against Plaintiff's Home, the Trustee must prove and certify to all parties that, among other things required under the PSA:

    a. There was a complete and unbroken chain of indorsements and transfers of the Note from and to each party to the securitization transaction (which should be from the (A) Mortgage Originator to the (B) Sponsor to the (C) Depositor to the (D) Trust/Trustee, and that all of these indorsements and transfers were completed prior to the Trust closing dates (see discussion below); and

    b. The Trustee of the Securitized Trust had actual physical possession of the Note at that point in time, when all indorsements and assignments had been completed. Absent such proof, Plaintiff alleges that the Trust cannot demonstrate that it had perfected its security interest in Plaintiff's Home that is the subject of this action. Therefore, if the Defendants, and each of them, did not hold and possess the Note on or before the closing date of the Trust herein, they are estopped and precluded from asserting any secured or unsecured claim in this case.

Plaintiff is informed and believes, and thereon alleges, that pursuant to the terms of the PSA, the Mortgage Originator (i.e., the original lender herein) agreed to transfer and indorse to the Trustee for the Securitized Trust, without recourse, including all intervening transfers and assignments, all of its right, title and interest in and to the mortgage loan (Note) of Plaintiff's herein and all other mortgage loans identified in the PSA.

Based upon the foregoing, Plaintiff is further informed and believes, and thereon alleges, that the following deficiencies exist, in the "True Sale" and securitization process as to this Mortgage/Deed of Trust which renders invalid any security interest in the Plaintiff's mortgage, including, but not limited to:

a. The splitting or separation of title, ownership and interest in Plaintiff's Note and Mortgage/Deed of Trust of which the original lender is the holder, owner and beneficiary of Plaintiff's Mortgage/Deed of Trust;

b. When the loan was sold to each intervening entity, there were no Assignments of the Mortgage/Deed of Trust to or from any intervening entity at the time of the sale. Therefore, "True Sales" could not and did not occur;

c. The failure to assign and transfer the beneficial interest in Plaintiff's Mortgage/Deed of Trust to HSBC BANK, in accordance with the PSA of the Defendants, as Securitization Participants;

d. The failure to indorse, assign and transfer Plaintiff's Note and/or mortgage to Defendant HSBC BANK, as Trustee for TRUST 2005-12 Trust, in accordance with the PSA;

e. No Assignments of Beneficiary or Indorsements of the Note to each of the intervening entities in the transaction ever occurred under NEW JERSEY law, which is conclusive proof that no true sales occurred as required under the PSA filed with the SEC; and

7

    f.   Defendants, and each of them, violated the pertinent terms of the PSA.

### D. THE STANDARD FOR INJUNCTIVE RELIEF IS SATISFIED

1. EQUITY RELIEF FROM FORECLOSURE

In order for a mortgage foreclosure action in New Jersey to be deemed "contested" and thereby listed for trial, the answer or other pleading responsive to the complaint must "contest the validity or priority of the mortgage or lien being foreclosed or create an issue with respect to plaintiff's right to foreclose it." R. 4:64–1(a)(2).

Any answer, therefore, which does not contest the validity or priority of the mortgage being foreclosed or create an issue with respect to plaintiff's right to foreclose it is deemed "uncontested" and the matters raised in that answer will not be heard by a judge, nor will such an answer prevent plaintiff from proceeding and obtaining an "uncontested" judgment, on notice, from the Office of Foreclosure. R. 4:64–1(b).

### E. PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS AT TRIAL.

The foreclosure sale and/or any further transfer of ownership or encumbrance must be enjoined because the evidence elicited demonstrates that Plaintiff will succeed on the merits at trial. Plaintiff has successfully alleged nine causes of action against Defendants in this case, including violations of TILA and RESPA; Fraud; Unfair and Deceptive Business Practice; Unconscionability; and Quiet Title.

An actual controversy has arisen and now exists between plaintiff and defendants regarding their respective rights and duties. Plaintiff contends that his note and Mortgage/Deed of Trust where not transferred and/or assigned pursuant to Plaintiff's loan's PSA and/or New Jersey Law, that defendants violated Federal TILA and RESPA laws, as well as committed fraud in the inducement and concealment at the initiation of the loan. A judicial declaration is necessary and appropriate at this time under all the circumstances so that plaintiff may determine his or her rights and duties under the note and *Mortgage/Deed of Trust*.

At the very basis of Plaintiff's Complaint, based upon the facts outlined herein and above, Plaintiff has alleged and can demonstrate at trial that Defendants breached their PSA contract and through misrepresentation are about to foreclose on Plaintiff's real property, and that because of the securitization process Defendants and their predecessors in interest failed to properly assign Plaintiff's Mortgage note and Mortgage/Deed of Trust according to state law

8

and the PSA governing the original loan.

### PRAYER

WHEREFORE, plaintiff requests judgment as follows:

1. A temporary restraining order, a preliminary injunction, and a permanent injunction, all enjoining defendants, defendants' agents, attorneys, and representatives, and all persons acting in concert or participating with them, from selling, attempting to sell, or causing to be sold the property, either under the power of sale in the Mortgage/Deed of Trust/mortgage or by foreclosure action;

2. A declaration by the court that sale of the property to enforce the Mortgage/Deed of Trust/mortgage is improper in that plaintiff has raised a claim that the defendant's do not legally hold the note or Mortgage/Deed of Trust and/or do not have right to foreclose on the subject property;

3. Costs of suit; and

4. Any further relief that the court may deem just and equitable.

Dated 10-29-2015

*Owen Thomas Lennon*
*Pro persona, in vivus, sui juris*

APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND DECLARATORY RELIEF

## VERIFICATION

I am the plaintiff in this action. I have read the foregoing complaint and it is true of my own knowledge, except as to those matters stated on information or belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of New Jersey that the foregoing is true and correct.

*Date of execution:* __10-30-2015__

_____
PLAINTIFF

Owen Thomas Lennon

Pro persona, in vivus, sui juris

_____
NOTARY

[SEAL]   DANIEL R. THOMAS
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires 6/17/2016

---

10

**APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND DECLARATORY RELIEF**